**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED DEC 2 0 2012

LORETTA G. WHYTE
CLERK

Joanne Stone
PLAINTIFF

**CIVIL RIGHTS COMPLAINT**

Vs.

CIVIL ACTION NO. **12-3022**

Louisiana Department of Revenue
DEFENDANT

**SECT. C MAG. 2**

### A. JURISDICTION

Jurisdiction is proper in this court according to:

a. _42 u.s.c s 1983

b. _42 u.s.c.s 1985

JOANNE STONE IS A CITIZEN OF THE STATE OF ALABAMA.

PRESENT MAILING ADDRESS: 6508 LIONS GATE COURT, MOBILE ALABAMA

LOUISIANA DEPARTMENT OF REVENUE A CITIZEN OF BATON ROUGE, LOUISIANA

PRESENT MAILING ADDRESS: 900 N 3RD STREET BATON ROUGE, LOUISIANA 70802-5236

### B. NATURE OF CASE

The employer only allows white workers to work completely from home, and treats blacks differently by this action. After repeated request were made that were ignored. An EEOC claim was filed and a RIGHT TO SUE letter was received in September 2012.

TENDERED FOR FILING
DEC 20 2012
U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Fee $350.⁰⁰
✓ Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

## C. CAUSE OF ACTION

1. I allege that my constitutional rights, privileges or immunities have been violated and that the following facts form the basis of my allegations:

a. (1) Count 1: Once I requested to in an out-of-state position (work full time from home), I received no reply, but eventually was allowed to work as a Telecommuter. As a telecommuter, I worked Monday, Tuesday, and Wednesday from my home in Mobile, AL and came into the New Orleans office on Thursday and Friday. I later found out that they would rather give up my position than have me work from my home in AL in an out of state position (work full time from home).

(2) Supporting Facts: As I worked from home part-time as a telecommuter. As I know they did not want me in an out of state position (full time work from home), Vendetta Lockley did things like harassing and singling me out. On November 10, 2009 Vendetta sends an email to everyone (_LDR-New Orleans Audit) stating that "So far this quarter **everyone** has been on target, not exceeding the total number of administrative hours allowed". Then on November 12, 2009 in an email to me, she states "Reviewing your time sheets, I am requesting you reduce the total non-audit hours. There appear to be a significant number of non-audit hours; this is a sign of either not enough work, which we know is not true, or misuse or misallocation of time. If we re-examined exactly what tasks you were performing some of those hours probably should have been charged to the case, etc." I respond, "Hours were spent for audit prep and meeting with you and desk audit special project, etc.., As you had previously discussed, we are allowed to use more than one hour a day for audit trip prep. I am out of state currently and feel there are no corrections necessary. I do not know what you want? Tell me specifically where you want the hours charged because I put them to what I actually worked on. So, I have no corrections to make. It is beginning to appear that you are picking on me for some reason???" She then responds on November 23, 2009, "I am just getting to your email...no, I'm not picking on you and I am

surprised you would think that. You recall from our meeting that I'd advised everyone that pre-audit hours were to be charged to the case when the work is specific to that audit. What I was trying to identify is whether these hours were to be charged to the case and not office time...We can discuss in person next week, if you so desire". Now, remember I am currently in Chicago on an out of state trip. Also, Vendetta just said in her email two days ago on November 10, 2009 that everyone (which includes me) was on target. Next, Vendetta sends an email stating that I was on target with cases, then provides me with an unfair evaluation by not counting all my cases to lower my production numbers, and giving back cases to me which delayed them from being counted in the end of year numbers and telling me to do the some cases twice both by apportionment and separate accounting even after higher level of management was directing that it be done by way of apportionment, asking for work that she already had, assigned me more cases. Improperly handling case credit for the TW & subs group and misguidance on audits. With all the subsidiaries I reviewed, she did not want to count separate case credits for them and I did not receive the case credits. She directs me to handle the Crnvl Ship as a hotel audit and repeatedly gives it back and forth and then she embeds a formula in the spreadsheet that is affecting my calculation on the work paper. I am directed to do both Hlen Brt and Hrrhs apportionable accounting and separate accounting method but I will lose work time doing this and get only one credit for the case. She was to count the initiated audits then said that the initiated audits where not going to matter and only look at the case completed numbers that would matter. Try to focus on an area to try to fail me. The rules started changing in mid-year. Rules regarding sharing case credit to only giving the person with the most hours on the case the case credit. Desk audits were given to me that had lower assets than those assigned to another white employee Annette Broadway. She accepted audits from the white employee Annette Broadway where no law had been quoted, nor supporting work schedules presented in file and gave me a difficult time on my audits stating to quote laws and combing through ever word. I would reference the laws and or quote where needed. Vendetta also once assigned the

white employee, Annette Broadway as lead on the out-of-state audit even though I had more experience and time with the department. Vendetta would ask for reports and tell me to get them to her by 1pm and then ask Annett Broadway for the report and give her the day to get it to her but would not list any time limit on receiving the report. Vendetta stated her dad had a business and that blacks were lazy and did not want to work so her dad had to do all the work. Many other black workers have all left their employment with LDR. For instance, Vendetta stated that Shantel Jefferson a black employee was slow, and of one other Black guy Lester Rainey she stated he was always looking to blame someone for something. Both these employees are gone and so are two others Decarla Scott and Joanetta Anderson. Vendetta stated that she put me in a category with Kevin Johnson and that we got off the short school bus. Vendetta was rewriting Kevin Johnson's comments and work a lot. I can handle my own writings/comments.

b. (1) Count 2. I complained and filed a grievance against Vendetta Lockley to both Keith Debautte and Jay Frost. They had no policies in place at the LDR to handle these types of specific problem. But I had been told that a committee would be formed to hear the problem. After waiting some time and requesting that human resources act as things were worsening for me. I later spoke with Kurt Van Brocklen and then Jay Frost, it was arranged that I would transfer to work at the Houston, Texas office. But, before I could leave the New Orleans office, Vendetta Lockley found out that I was being transferred and then accused me of losing a waiver of prescription and tried to block my leaving stating that I must first complete some assignments.

b(2) Supporting Facts: She then did things like search my office for a waiver of prescription document that was to have been signed an executed by end of year December of 2009, but she suddenly concluded in July of 2010 that she did not have the waiver of prescription document. The search began publicly with the door opened wide. Others walked by raising their eye brows. I was called on the phone

by Vendetta to come in from telecommuting in AL with files and that she had already looked through some of my files and I was searched four times. Vendetta Lockley, Sikandra Clark, and Wayne Lockhart searched my office. Vendetta searched again.

c. (1) Count 3: Wayne Lockhart, Revenue Tax Audit Supervisor searched through the files in my office.

c. (2) Supporting Facts: Wayne Lockhart at this time stated that I was "Dead Wood in the Water and that I should lie on the gun".

d. (1) Count 4: Sikandra Clark, Computer Audit Assist Specialist Manager searched through my files.

d. (2) Supporting Facts: As she searched she stated, another set of eyes and clapped her hands as she finished going through the box that I had brought in from Alabama. Lynette Hampton looks on and starts laughing at me and then gets up and leave. Jim Dogan is also present for this.

e. (1) Count 5: In Jay Frost's, Director of Field Audit Services, response to the grievance letter, Mr. Frost, accused me of losing the waiver of prescription document.

e. (2) Supporting Facts: I told Jay Frost that the Waiver of Prescription document is addressed specifically and directly to Vendetta Lockley.

f. (1)Count 6: I was subject to a humiliating public search of my office and files in public view.

f. (2) Supporting Facts: One co- worker comes up to me and states I hear you are being forced out. One of the police officers with ATC, that shares office space with us walks by while my office is being searched with the door wide opened and raises his eye brows and looks on shaking his head.

g. (1) Count 7: I eventually went on to Texas as planned. While in Texas, Dee Everett – Director of Human Resources accused me of losing the Waiver of Prescription document.

g. (2) Supporting Facts In Dee Everett response letter to the EEOC January 2011, she misleadingly focuses on Telecommuting as opposed to out-state full time work from home positions as if that is the issue. In the letter dated January 3, 2011 from Dee Everett, Human Resources Director of LDR to the EEOC office she states in an accusatory manner that,"Ms. Rhea did not have any record of the document which indicates that she lost or misplaced it". This is not true, I did not lose or misplace the Agreement to Suspend Prescription (Waiver of Prescription) document . A letter is always sent with the Agreement to Suspend Prescription stating that it is to be mailed directly and specifically to the attention of Vendetta Lockley and besides she said she had her copy. I sent to Keith Debautte the Agreement to Suspend Prescription that were signed and faxed over by the taxpayer. The manager executes the document by the year end for it to be a valid Agreement to Suspend prescription. After the accusatory language of by both Dee Everett Human Resources Director and Jay Frost, Field Audit Director it should be noted that they are all involved in the work situation and are informed of what is taking place and provide a more hostile environment. Emails were sent that anyone transferring were to be put back on probation for 12 months.

h (1) Count 8:. Jay Frost's response to the grievance, he states in an accusatory manner that I lost the waiver of prescription document. Now the environment is hostile, It does not sound like it's going to be good for me around here because they are just now accusing me like I did something when I did not do any wrong. I continue working because I need the money but make some attempts to leave. Now the bad references come in to play. Several companies are hinting at the Department of Revenue references. These are hurting me. Defamation of my character and future potential jobs are at stake now. To date I have not been able to get a permanent job position.

h. (2) Supporting Facts: I interviewed with the Mobile Al Treasury Department and now the man is looking at me frowning up and tells me that he called that number in New Orleans on my job application

and frowned up at me. The LDR is trying to stop me from working via poor job references, defamation or something. I consider this a very pervasive action or hostility and retaliation. So they are accountable for their actions here as well. This is one of several potential employers contacted. So, I continue on working and just try to make it at the LDR.

i. (1) Count 9:While in Texas, on September 22, 2010 the Manager, Kevin Richard gives me a planning / expectation session during the first 30 day period of being in Houston, Texas.

i.(2) Supporting Facts: It states for solid sustained performance I must do 18 cases. He states "get along with your supervisor" at the session.

j. (1).Count 10: Within the next two months, he states "Do you think the problems you were having in New Orleans were due to Racism?"

j. (2) Supporting Facts: Kevin Richard lets me know that Jay asked him about my coming to Houston, TX and he states, "as if he had a choice". Now, Kevin worked for the employer in Louisiana before he transferred to Houston, TX and became the Manager of the Texas Office. Therefore, Kevin is not entirely different Management. Kevin Richard is from the New Orleans Office. Vendetta Lockley, Sikandra Clark and Kevin Richard and I have all worked together in the New Orleans Office. He is real good friends with Sikandra Clark. While I was in the New Orleans office my office was next door to Sikandra Clark's office. Both Sikandra Clark and Kevin Richard came up working together in Collections. Sikandra Clark is a close friend of Kevin Richard and a best friend of the Manager Vendetta Lockley. At one point while in New Orleans office Kevin Richard was my Supervisor. But, I was disappointed in his comment that he did not have a choice in my coming to Houston, Texas.

k. (1) Count 11: I have informed Kevin Richard of my telecommuting work schedule. But, now due to discriminatory/retaliatory/ hostile work environment substantial changed now exist to my work condition and work schedule.

k. (2) Supporting Facts: I no longer Telecommute the Mon, Tues and Wed. Eventually after about 8 months in Houston, Texas, I get 1 day a week telecommute starting in about May 2011. Again in April 2011, I ask for out of state position (work full time from home), but I am only to telecommute the one day a week. Again in August 2011, I ask to work in an out state position (full time work from home).

L (1) Count 12:The Director Jay Frost, is both Vendetta Lockley's and Kevin Richard's immediate boss.

L (2) Supporting Facts: Jay Frost has been a constant factor throughout my work situation and is not at a different next level of supervision than when I was in LA. He is at the same position while I am in Texas as he was when I was in Louisiana. Jay Frost is a direct immediate supervisor of Kevin Richard and Kevin Richard is directed by him on matters. When I would go to him on case issues like Doctor's Associates, he stated that he would get with Jay Frost. When I went to him on resignation rescind, he went to Jay Frost and others and said he would get back with me. This tells me who he takes his orders from.

m. (1) Count 14: Although I dealt directly with the Supervisors, Jackie Rhodes and Elise Thomas, they would state that they had to get with Kevin Richard and /or Human Resources.

m. (2) Supporting Facts: To telecommute, Jackie Rhodes stated that Kevin Richards signs off on that, it is his decision. Also, when I put my March 2012 leave request in with Supervisor Elise, via email it was stated that she had to go through Human Resources and have Doctors notes verified through Human Resources. Now who is calling around about my Doctor Visits? These two above actions tell me other Directors were involved like Jay Frost and Human Resources. I can only tell you I am not sure to what

extent they may have affected me but only that both Jay Frost and Human Resources knew of my work situation.

n. ( 1) Count 15 While in Texas, the employer continued to discriminate against me.

n. (2) Supporting Facts: Specifically in both May 2011, and in August 2011 in an email letter to Jay Frost, Earl Millet and copying Kevin Richard I requested and should have been granted the out-of state position (right to work completely from home) as some white agents were allowed to but the employer never responded, never acted on this. See the list of auditors who are in out of state positions, who are non-African Americans.  Check the numbers of blacks working in out-of-state positions as opposed to whites and non-African Americans. List of Auditors in out- of- state (work full time from home positions):

| White/Non-African American out-of-state worker: | Black/African American out-of-state Worker: |
|---|---|
| Atlanta, GA | (None to my knowledge) |
| Anthony Caruso | |
| Raymond Dupree | |
| | |
| California | |
| Ronald Shultz | |
| Dan Jesolva | |
| | |
| Chicago, IL | |
| Arlene Leodler | |
| | |
| Richmond, Virginia | |
| Leslie Shreve | |
| | |
| New York | |
| *Melissa Richardson (now handles San Antonio/Austin) | |
| | |
| Austin, TX | |
| *Albert Rodriguez | |
| | |
| Oklahoma | |
| Tom Burke | |
| Clement Parkhill | |

Chuck Pulliam
Larry Edwards

### NOTES ON OUT-OF STATE AUDITORS (Work full time from home)

**\*Melissa Richardson** no longer wanted to work out of state in NY because they wanted to tax her property in LA. So The Louisiana Department of Revenue made arrangements for her to handle the work as an out-of state agent in TX. She is covering the Austin, TX and San Antonia, TX while under the Dallas location office.

**\*\*Albert Rodriguez** - was working in the Houston TX office, THEN was allowed to be an out-of-state Auditor for Austin –he requested it because he wanted to be there to take care of his ill father

o. (1) 16. I faced retaliatory harassment for having filed the EEOC complaint.

o.(2) Supporting Facts: I was retaliated against and harassed about taking leave/ time off. The supervisor Elise Thomas states they (management: she and Kevin Richard and human resources) verify doctors notes for leave approval. Supervisor, Manager and Human Resources (the company LDR) were aware of work situation through their involvement in it.

p. (1) Count 17 I have been under doctor's care periodically throughout my employment. I faced anxiety, stress, etc. I was under doctor's care and not feeling well; therefore, I was out sick from work March 14, 2012 until March 22, 2012. When I returned to work on March 22, 2012, I was counseled stating that I 'must' schedule leave in advance. I asked that Manager Kevin Richard check with human resources about this as I did not know how to schedule sick leave in advance. I spoke with him about some people were coming in to work late every day, specifically Vinitha George, a non-African American employee and that I did not see an indication of a write-up to them. This was unfair. Per the policy, I can take up to 360 hours of leave time off within a calendar year; I had not even reached 200 hours of leave time use. There is a print out of time used for the year.

q. (1) Count 18: A hostile environment was created also by the employer.

q. (2) Supporting Facts: It was hostile when Managers, Directors and Dee Everett of Human resources accused me of losing an original waiver of prescription document. It was hostile when Kevin the manager continued to ask me to make changes to my work and do the cases over again in two to three different ways and only receive one case credit, even after the supervisor had accepted my work and not telling me in some instances what he wanted me to do. From my review of the previous audit file, I saw that other similarly auditors work were accepted with minimal comments. I had to speak with Kevin Richard to correct my PPR review in regards to the cases completed and cases directed to specifically complete, etc. and I did received a solid sustained performance review. Kevin has walked out and not payed attention to me when I was discussing work. Kevin stated he check with Jay Frost on the handling of the case. As I stated, Directors were involved with the work situation and where in a position to know or should have known of the work situation. It was hostile also when the employer harassing me about my leave/time off and to call my Doctors regarding me being on sick leave to verify the leave.

r. (1). Count 19: I believe this was a constructive discharge.

r. (2) Supporting facts: Management stated that they would rather lose the position than have me working from home. I went from working Mon, Tues, Wed from home in AL, to after waiting 8 months once I was in Houston, TX to working only one day a week telecommuting. After I resigned, a meeting was held to let workers work more than 2 days from home up to 3 days from home. I was retaliated against and harassed about taking leave/ time off. Through the continual denial of an out of state position (full time work from home position I was discriminated/ retaliated against and faced hostile environment. The employer had opportunity to respond/ act on the out of state position request (work from home full time position)as more than one request was made.

### D. INJURY

I have been injured emotionally and financially and future employment scarred by defamation and poor references. I requests any and all remedies allowable by law.

### E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1 a  Parties to previous lawsuit:

Plaintiff: Joanne Stone

Defendant: Louisiana Department of Revenue

  b. Name of Court and case docket number: United States District Court of Louisiana

Case docket: 2:12-cv-02182

  c. Disposition: I request it Dismissed with prejudice.
  d. Issues were to review the administrative judge's decision on the disqualification of unemployment benefits.
  e. Filed on August 2012

### F. REQUEST FOR RELIEF

1. I believe that I am entitled to the following relief: and all relief permissible by law.

<u>I respectfully request a trial by jury</u>

## Declaration Under Penalty of Perjury

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C 1746;18 USC 1621

Executed at _Mobile, AL_ on _December 19, 2012_

Signature: _Joanne Stone_
Plaintiff/Petitioner     Joanne Stone
In Proper Person

Address:
6508 Lions Gate Court
Mobile AL 36618
PH#(251) 510-5266

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Joanne Rhea<br>6508 Lions Gate Court<br>Mobile, AL 36618 | From: New Orleans Field Office<br>1555 Poydras Street<br>Suite 1900<br>New Orleans, LA 70112 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2010-01884 | Uma Kandan, Supervisory Investigator | (504) 595-2856 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*     SEP 2 0 2012

Enclosures(s)     Keith T. Hill, Field Director     *(Date Mailed)*

cc: Dee Everett<br>
Human Resources Director<br>
LOUISIANA DEPARTMENT OF REVENUE<br>
P. O. Box 201<br>
Baton Rouge, LA 70821

# CHARGE OF DISCRIMINATION

Charge Presented To: Agency(ies) Charge No(s):

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

[ ] FEPA
[X] EEOC  461-2010-01884

**Louisiana Commission On Human Rights** and EEOC
*State or local Agency, if any*

| | |
|---|---|
| **Name** (indicate Mr., Ms., Mrs.) **Ms. Joanne Rhea** | **Home Phone** (Incl. Area Code) (504) 715-5544 — **Date of Birth** 04-25-1968 |
| **Street Address** 550 Brown Street, Jefferson, LA 70121 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **LOUISIANA DEPARTMENT OF REVENUE** | 15 - 100 | (504) 568-2625 |

**Street Address:** 1555 Poydras St., Suite 2100, New Orleans, LA 70112

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11-01-2009   Latest: 08-12-2010

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Louisiana Department of Revenue in July 2001, as a Revenue Tax Auditor III earning $15 per hour. My current salary is $24 per hour. After reporting that I was harassed by my supervisor, I was treated differently than my co-workers in that my work was scrutinized and the harassment had gotten progressively worse. Respondent, Louisiana Department of Revenue, employs 15 to 100 employees.

No reason was given for the action taken against me.

I believe I have been discriminated against because of my race, Black and in retaliation for opposing discriminatory practices made illegal under Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 11/22/10 *(signature)*
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

FedEx shipping label addressed to US District Court, 500 Poydras St, Room C-151, New Orleans, LA 70130. Tracking number 8011 0921 8749. Ship date 19DEC12, Priority Overnight.