**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOANNE STONE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-3022** |
| **LOUISIANA DEPARTMENT OF REVENUE** | **UNITED STATES MAGISTRATE** |
| | **JUDGE KAREN WELLS ROBY** |

**ORDER AND REASONS**

Before the Court is Defendant, the Louisiana Attorney General of the State of Louisiana, through

its Department of Revenue's ("Department") **Motion to Dismiss, Alternatively, Motion for Summary**

**Judgment (R. Doc. 30)** of Plaintiff, Joanne Stone's ("Stone")[1] complaint.  The Motion is opposed.  *See*

R. Doc. 35.  A reply to the opposition was also filed.  *See* R. Doc. 39. The underlying motion was noticed

for submission on November 13, 2013, and heard on the briefs on that date.  *See* R. Doc. 36.

**I.      Background**

Stone is an African American female, who worked as a Revenue Tax Auditor II of the

Department. *See* R. Doc. 1, pp. 1, 15.[2] She alleges that she worked out of the Department's New Orleans,

Louisiana office, from July 17, 2001, until August 23, 2010, before transferring to the Department's

Houston, Texas office, where she worked until she resigned by letter on March 26, 2012. See R. Doc.

20-4, p. 166; R. Doc. 26-1, p.73-76; R. Doc. 26-2, p. 91.

---

[1]On some documents attached to Stone's Complaint Stone is apparently referred to as "Joanne Rhea."  *See* (R. Doc. 1, pp. 14-15).  Although not explained, the Court construes the change in last name to mean that Stone changed her last name between the time certain events in question occurred, and the time she filed the instant suit.

[2]Although Stone amended her complaint as directed by this Court, her allegations remain substantively identical to her first complaint, which was filed on December 20, 2012. The main difference is that all her allegations were plead under 42 U.S.C. § 1983 and § 1985, which were improper. See R. Doc. 1, p.1.

Stone originally instituted this action on December 20, 2012, alleging that she was discriminated against pursuant to Title 42 U.S.C. § 2000e, 42 U.S.C. §§ 1983 and 1985 because her request to telecommute was denied due to her race, as white employees were allowed to telecommute.  *See* R. Doc. 1. Stone alleges that she requested the opportunity to work from home and initially did not receive a response. Eventually though, Stone alleges that she was allowed to telecommute and work from her home in Alabama on Monday, Tuesday and Wednesday of each week. She alleges that she worked in the New Orleans office on Thursday and Friday of each week.

Stone alleges that she later learned that her employer would prefer to eliminate the position rather than permit her to continue to work in accordance with her telecommuting schedule. She alleges that beginning in November 2009, her supervisor, Vendetta Lockley ("Lockley"), who is also African American,[3] began singling her out and questioning her via email regarding her case chargeable audit hours versus non-audit hours, which were chargeable to the office.  Stone construed Lockley's inquiries as harassment, because two days before her inquiry, Lockley sent an email to the group indicating that every employee was on target.  *See* R. Doc. 26-1, p. 19.  Stone's complaint alleges that this email was the beginning of what she characterizes as a series of racially discriminatory and harassing behavior by Lockley towards her. *See* R. Doc. 26, p. 5-8.

Specifically, Stone alleges that Lockley singled her out by not giving her credit for all the audited cases she handled, thereby lowering her production amount; returning her completed audit cases back to her too late to be counted toward the end of the year production number, allegedly making racially derogatory comments about African Americans being lazy and slow, and by giving desk audits which had "lower assets than those assigned to another white employee, Annette Broadway." *See* R. Doc. 26, p. 5-8.

---

[3]Vendetta Lockley's title was "Tax Revenue Audit Manager," as indicated by the attachments in the record.

Stone complained that the desk audits she received contained fewer assets than desk audits given to her white coworkers, that Lockley accepted audits from white coworkers without reference to any legal basis, and that only her white coworkers were assigned as lead auditor on out of state audits. *Id.* Stone's complaint also alleges that Lockley's discrimination against her became so intense, that she filed an internal grievance with the Department on May 12, 2010, which was mitigated because the department arranged a transfer for Stone to the Houston, Texas office. *Id.* at 7.

Stone's transfer was allegedly approved on July 8, 2010, and scheduled to be completed in August 2010. *Id. See also* R. Doc. 26-2, p. 47. Stone alleges that shortly before her transfer was completed, sometime in July 2010, Lockley accused her of losing a client's "waiver of prescription form," which was required to be signed and submitted before December 2009. *Id.* Stone alleges that Lockley's attempt to stop and/or slow down her transfer to Houston and alter her telecommuting privilege by claiming that she did not complete several time-sensitive assignments, constituted a hostile work environment. *Id.* at 7, 13, 25. Furthermore, Stone alleges that she was humiliated by Lockley, Wayne Lockhart ("Lockhart"), a Revenue Tax Supervisor, and Sikandra Clark ("Clark"), a Computer Audit Specialist Manager, when they publically searched through the files in her office, allegedly looking for the waiver of prescription form. *See* R. Doc. 26, p. 7, 13.

Stone filed her first charge of discrimination, with the Equal Employment Opportunity Commission ("EEOC") on August 12, 2010, alleging race discrimination and retaliation against the Department for Lockley's discriminatory treatment of Stone, in comparison to Caucasian, Annette Broadway. *See* R. Doc. 26-2, p. 47-52.[4] In addition to her charge, she filed a declaration with the EEOC

---

[4] Charge # 461-2010-01884, R. Doc. 26-2, p. 42. The EEOC concluded its investigation on September 20, 2012 by issuing a Notice of Right to Sue dated September 20, 2012, which stated that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." *See* R. Doc. 1, p. 14; R. Doc. 26-2, p. 36. Stone also filed a subsequent EEOC Charge on November 22, 2010, alleging race, retaliation and harassment due to her Lockley's conduct. Stone's Complaint was signed on December 19, 2012, and docketed on December 20, 2012. Both dates are within the 90-day period allowable for bringing suit pursuant to the EEOC's September 20, 2012. *See infra,* n. 16

stating that Lockley harassed her because of her race, by accusing her of losing the prescription document and subjecting her to a humiliating search. *Id.* Stone also alleged that five other black employees at the Department left because of Lockley's alleged racial harassment. *See* R. Doc. 26-2, p. 47. She formally amended her charge on December 7, 2010, to include "racial harassment," which allegedly occurred at the latest date of September 9, 2010. *Id.*

Stone ultimately completed her transfer to the Houston office sometime in September, 2010, during the pendency of the investigation of the charge with the EEOC. *See* R. Doc. 26-1, p. 26-28. However, after approximately eight months of working in the Houston office, Stone alleges that her telecommuting work days were reduced from three days to one, in April 2011, which she attributes to the Director, Jay Frost's relationship with her manager Kevin Richard ("Richard") and old supervisor, Lockley. *See* R. Doc. 26, p. 10.

Because of the change and reduction of her telecommuting schedule, Stone alleges that on April 5, 2011, she renewed her request to be considered for an out-of-state position in or near Mobile, Alabama. *See* R. Doc. 26-1, p. 112. She again renewed her request on August 4, 2011, but was denied even though other white employees were allegedly granted the right to telecommute. *Id.* at 114. Having not received a transfer, on February 29, 2012, Stone sent a formal letter of resignation to Richard stating that her final work day would be March 21, 2012. *See* R. Doc. 26-1, p. 117.  She rescinded this letter on March 7, 2012, stating that she was upset about her work situation because she wanted to be able to work from home during the entire week. *See* R. Doc. 26-1, p. 116.

However, on March 14-15, 2012, Stone emailed her then supervisor, Elise Thomas ("Thomas") indicating that she needed several more days of leave because she was not feeling well and needed to go to the doctor. *See* R. Doc. 35-2, p. 30. Thomas responded that Stone's leave "may" be approved upon her bringing a note from her physician, which would need to be verified by Human Resources. *Id.*

4

According to Stone, Thomas' email stating that she may be required to have a verified doctors note prior to obtaining leave approval, constituted harassment and a hostile work environment, which ultimately led to Stone's sending of another formal letter of resignation on March 26, 2012, which provided that her final day would be April 9, 2012. *See* R. Doc. 26-1, p. 115.

On December 12, 2012, Stone filed the instant action, alleging that she was constructively discharged and forced to resign as a result of the Department's refusal to allow her either to (1) maintain her three day a week telecommute from Alabama or (2) assign her to conduct out of state audits. *See* R. Doc. 26, p. 3, 13-14.  She alleges that she suffered emotionally, financially, and sustained damages as a result of the emotional distress and poor references she allegedly received.[5]

On February 28, 2013, Stone filed a second EEOC charge in which alleged race discrimination, retaliation, constructive discharge, and harassment for the same dates she alleged in the first charge she filed with the EEOC, from the dates of August 25, 2010, through April 30, 2012. *See* R. Doc. 35-2, p. 27. The EEOC concluded its investigation and issued a Notice of Right to Sue dated June 10, 2013, which stated that the EEOC closed the charge because the "charging party has filed suit in federal court." *See id.* at 29.

---

[5]Stone's initial complaint alleges nearly two dozen counts which the Court has consolidated as: (1) racial discrimination, (2) hostile work environment/constructive discharge, (3) retaliation, and (4) defamation, for clarity. Stone's complaint improperly alleged that her claims arose under 42 U.S.C § 1983 and § 1985, which the Department sought to dismiss pursuant to 12(b)(6), on February 28, 2013. See R. Doc. 1, p. 1; R. Docs. 4, 5. On March 20, 2013, the presiding U.S. District Judge dismissed with prejudice Stone's allegations as to her claims for relief, because Stone failed to properly address her entitlement to relief under 42 U.S.C § 1983 and § 1985. See R. Doc. 8, p. 1.

On September 12, 2013, as directed by this Court,[6] Stone filed an amended complaint into the record.[7] The crux of her amended complaint appears to be that she was not allowed to telecommute full-time due to her race, and that the Department allegedly threatened to discipline her for "engaging in the EEOC" process by questioning and denying her requests for leave, time off, and to work full-time from home." *See* R. Doc. 26-2, p. 59-62.

As to the instant motion, on October 4, 2013, the Department filed a Motion to Dismiss, and Alternatively, Motion for Summary Judgment, seeking to dismiss Stone's complaints for failing to state a claim upon which relief can be granted and/or alternatively as a matter of law pursuant to Federal Rules of Civil Procedure 56. *See* R. Doc. 30, p.1.  Specifically, the Department claims that (1) Stone's suit is barred by res judicata, (2) Stone cannot state a *prima facie* case for any of the Title VII claims she alleges, and (3) Stone's Title VII claims have not been administratively exhausted and/or are prescribed. *Id.* Stone has opposed the underlying motion. *See* R. Doc. 35. The Department has filed a reply to Stone's opposition. *See* R. Doc. 36.

## II.    **Standard of Review**

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,(2007)).

---

[6]On July 23, 2013, Stone filed an *exparte* motion for Leave to File for Default Judgment, (R. Doc. 20), which was denied by this Court on August 19, 2013. In this Court's Order of denial on said motion, the undersigned also ordered that "Stone shall file an Amended Complaint into the record specifically addressing her Title VII claims no later than 20 days after the issuance of this Order." (R. Doc. 22).

[7] Stone's amended complaint alleges (1) race discrimination, (2) retaliation, (3) harassment, (4) hostile work environment / constructive discharge, (5) disparate treatment and (6) defamation, but removed references to 42 U.S.C § 1983 and 1985. She properly asserted her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and "any other Civil Rights Act that applies." See R. Doc. 26, p. 2-3.

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Gallentine,* at 795; citing *Twombly*, 550 U.S. at 555.

Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; accord *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.2011); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir.2008). However,"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Nevertheless, the court "must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Elesensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). But the plaintiff's complaint "[must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Gallentine v. Housing Authority of City of Port Arthur, Texas,* 919 F. Supp.2d 787, 794 (E.D. Tex. 2013); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) *cert. denied,* 536 U.S. 960 (2002); (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); accord *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007), *cert. denied*, 552 U.S. 1182 (2008).

Generally, the court's analysis should focus exclusively on what appears in the complaint and its proper attachments." *Gallentine,* 919 F. Supp.2d at 794; *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). See e.g, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir.1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). The court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir.2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir.1995)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994)

The Fifth Circuit has also held that a Court may also consider documents attached to a motion to dismiss, without converting it into a motion for summary judgment, if the documents are referred to in the complaint and are central to the plaintiff's claim. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir.2012); *Causey v. Sewell Cadillac–Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir.2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir.1993)). Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Gallentine,* at 794-95, citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563.

Rule 12 states that a motion raising defenses listed therein, including Rule 12(b)(6), "must be made before pleading if a responsive pleading is allowed." (emphasis added). Because the Department has filed a motion to dismiss raising affirmative defenses therein, the underlying motion is timely pursuant to Rule 12(b)(6). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  However, in ruling on a Rule 12(b)(6) motion to dismiss, the Court cannot look beyond the pleadings, and must "accept as true those well-pleaded factual allegations in the complaint." *See Hall v. Hodgkins,* 305 Fed. App'x. 224,

227, 2008 WL 5352000 at *3 (5th Cir. 2008); *citing Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994); *Test Masters Educ. Serv's., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005). *See also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III.    Analysis

The Department alleges that Stone's claims in this suit should be dismissed because she filed a previous lawsuit in this court against them on September 20, 2012.[8] The defendant alleges that Stone, dismissed the earlier filed suit on her own motion with prejudice on November 19, 2012. As a result of the previous lawsuit, the Department contends that the doctrine of res judicata applies to this claim such that it should be dismissed.

Stone in contrast contends that her claims are not barred by res judicata. Stone points out that she filed for unemployment benefits in both Texas and Louisiana and she was told to pursue her unemployment claim in Louisiana. She alleges that she did not know where to appeal the denial of her unemployment benefits, so she initially filed it in this court, but later dismissed it because this court lacked jurisdiction over her Texas Workforce Commission unemployment claim.

The doctrine of res judicata "forecloses relitigation of claims that were or could have been raised in a prior action." *Steen v. Harvey,* 247 Fed. App'x. 511, 514 2007 WL 2693178 (5th Cir. Sept. 11, 2007); (*Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 312-13) (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980). One concept of res judicata, referred to as claim preclusion, treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. *SeaLand Services, Inc. v. Gaudet,* 414 U.S. 573, 578–79 (1974). Under claim preclusion, the effect of a judgment extends to the litigation of all issues and / or claims relevant to the same claim, that were or could have been advanced in support of the cause of action, between the same parties, whether

---

[8]*See* No. 12-2182, *Stone v. La. Dept. of Revenue.*

or not those issues or claims were raised at trial.  *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990). *See Koerner v. Garden Dist. Ass'n,* 2002 WL 31886728, at *8, n.40 (E.D. La. Dec. 23, 2002).

To determine if claim preclusion is applicable, four conditions must be met: (1) the parties in the later action must be identical to, or at least in privity with the parties in the prior action, (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction, (3) the prior actions must have concluded with a final judgment on the merits, and (4) the same claims or cause of action must be involved in both suits.  *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).

The Fifth Circuit however, has provided that generally, a res judicata or claim preclusion contention "cannot [first] be brought in a motion to dismiss, [as] it should be plead as an affirmative defense." *Hall,* 305 Fed. App'x. at 227; quoting *Test Masters,* 428 F.3d at 570, n. 2. But, this Circuit has emphasized that an opposing party must challenge the Defendant's use of a motion to dismiss or to invoke res judicata, "or such argument will be waived." *Id. See also* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 at 721, 728 (3d ed. 2004) (providing that under some circumstances affirmative defenses such as res judicata have been considered on a motion to dismiss).

Therefore, even if this Circuit has previously barred a party's assertion of res judicata for the first time as a motion to dismiss, if the opposing party, even a *pro se* petitioner, does not challenge or preserve the right to challenge the assertion of res judicata, it is waived. *See e.g., Hall,* at 227; *Longoria v. Dretke,* 507 F.3d 898, 601 (5th Cir. 2007). Here, Stone's opposition does not raise the Department's procedural failure to assert res judicata an as affirmative defense. Instead, she challenges it from a substantive position. Therefore, the Court finds that Stone has waived the procedural objection, as her opposition only substantively challenges the application of res judicata, and not the Department's failure to first answer and affirmatively plead res judicata, rather than asserting it first in its motion to dismiss. As a

result, the court shall analyze the substance of the Department's res judicata defense by addressing each of the factors below:

**A.      Res Judicata**

**1.        The parties to both actions are identical**

The Department contends that the parties in Stone's earlier suit, No. 12-2182, *Stone v. La. Dept. of Revenue,* and the instant action, are identical. *See* R. Doc. 30-2, pp.1-2. Stone's opposition does not address this argument. *See* R. Doc. 35-1, p. 3.

Because Stone and the Department are involved in both cases in the same capacities, Stone individually on her own behalf, and the Department in its same capacity, the Court finds that the parties are identical for purposes of res judicata. This factor weighs in favor of res judicata.

**2.        Judgment in first action is rendered by a court of competent jurisdiction**

The Department argues that this factor is undeniably satisfied, as the Eastern District of Louisiana was a Court of competent jurisdiction to hear Stone's appeal of the "Administrative Judge's Decision" on their disqualification of her claim of unemployment benefits. *See* No. 12-2182, *Stone v. La. Dept. of Rev,* R. Doc. 3, p. 1.

Stone's argument against this factor is not stated with specificity, however, the Court interprets that because she filed for unemployment benefits with both Texas and Louisiana Workforce Commission offices, the Louisiana Office improperly processed her claim, "because it is against the law to have two claims ongoing at the same time." *See* R. Doc. 35-1, p. 2. Stone contends that she, in error, sought an appeal of the denial of her unemployment benefits claim in this Court, because it was determined that the Texas Workforce Commission had jurisdiction over the matter, and not this Court, so she dismissed the appeal voluntarily for lack of jurisdiction. The Defendant does not address this issue.

Louisiana Revised Statute 23:1634 provides that the review of the denial of a claim for unemployment benefits shall be in the District Court of the domicile of the claimant. *See* La. Rev. Stat. § 23:1634. At the time Stone filed the claim here, she lived between Texas and Alabama, but not in Louisiana. The statute also provides that if a claimant is not domiciled in Louisiana at the time of filing the petition for review, "the petition or request [. . .] may be filed in the district court of the parish in which the claimant was domiciled at the time the claim was filed or in the parish in which the Louisiana Workforce Commission is domiciled." *See id.* Stone filed this claim in Louisiana, but improperly in the federal court, rather than the state district court as contemplated by La. Rev. Stat. § 23:1628.

La. Rev. Stat. § 1628 provides that an appeals for the denial of unemployment benefits are to be heard by an appeal tribunal approved by the Governor. *See* La. Rev. Stat. § 1628. This Court has not been designated as such a tribunal, nor has it been selected by the Governor. As such, Stone seeking review of the administrative denial of her unemployment benefits in this court is improper, as this Court does not have jurisdiction over an administrative claim. This factor weighs against res judicata.

### 3.    The first action concluded with a final judgment on the merits

The Department argues that Stone's dismissal of her initial action with prejudice constitutes a final judgment on the merits. *See* R. Doc. 30-2, pp. 1-2. Stone does not address this argument.

A dismissal of an action with prejudice normally constitutes a final judgment for purposes of res judicata, and bars a later suit on the same cause of action. *See Ray v. Kindred Hosp.,* 2013 WL 4041334, at *2-3 (S.D. Tex. Aug. 6, 2013); citing *Matter of W. Texas Mktg. Corp.,* 12 F.3d 497, 501 (5th Cir.1994) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir.1978) ("[i]t is clear that a stipulation of dismissal with prejudice, or, for that matter, a [voluntary] dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action") (quoting *Astron Indus. Assocs., Inc. v. Chrysler Motors*

*Corp.*, 405 F.2d 958 (5th Cir.1968)) (internal quotation omitted)). *See e.g., Vela v. Manning,* 469 Fed. App'x. 319, 322 (5th Cir. Mar., 26, 2012).  However, because this Court was not one of competent jurisdiction to hear Stone's administrative denial claim, the Court finds that Stone's voluntary dismissal is not a final judgment on the merits for purposes of res judicata. Having determined that the second and third factors have not been met, the Court does not reach the fourth factor. Because the Court finds that res judicata does not bar Stone's claims of discrimination, it will now consider the merits of the motion.

### B.   <u>Failure to Exhaust</u>

The Department contends that Plaintiff's purported February 2013 EEOC charge has not properly been administratively exhausted, as Stone has failed to establish that a signed, verified charge was submitted to the EEOC. *See* R. Doc. 30-2, p. 4. Specifically, the Department contends that Stone attached the notice of the February 28, 2013, charge of discrimination to her complaint, which alleged race and retaliatory discrimination, as well as harassment and constructive discharge.

However, this notice does not include a copy of the perfected EEOC charge. Instead, the notice states that "a copy of the perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party." *See id.,* citing R. Doc. 26, p. 17. Because the Department has yet to receive a copy of the perfected charge, it contends that there is no proof as to whether or not a signed, verified charge was ever filed. Therefore, the Department argues that Stone has failed to establish that she exhausted her administrative remedies as to her February 28, 2013 EEOC Charge.

In the alternative, the Department argues that even if Stone submitted a signed, verified 2013 EEOC Charge, any of the claims asserted therein are untimely, and should be dismissed, as the charge was filed more than 300 days after the date of the last day of the alleged discriminatory conduct. *See* R. Doc. 30-2, p. 5, citing *Huckabay v. Moore,* 142 F.3d 233 (5th Cir. 1998); *Rhyce v. Martin,* 2002 WL 31654971 (E.D. La. 11/21/02).

In opposition, Stone contends that she properly exhausted her administrative remedies, as she suffered from ongoing and continuing discriminatory and retaliatory actions from the Department, therefore her claims are not prescribed. *See* R. Doc. 35, p. 2. In further support of her argument, Stone attached a letter from an EEOC investigator, dated October 17, 2013, certifying that the EEOC received a charge of discrimination, number 461-2013-00849, from Stone on February 25, 2013.  *See* R. Doc. 35-2, p. 28.  Stone also included the EEOC's Notice of Dismissal, dated June 10, 2013, which provided that the EEOC was closing its investigation on the grounds that Stone had already filed suit in federal court. *Id.* at 29.  Stone's opposition however, does not include the actual EEOC charge she filed.

### 1.    <u>Proof of the 2013 EEOC Charge</u>

For an EEOC filing to be considered a properly filed charge of discrimination, it must contain an allegation, the name of the charged party, and a request for remedial action. *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1157-58 (2008).[9]

Here, Stone attached the Notice of the Charge of Discrimination, dated February 28, 2013, which alleged race and retaliatory discrimination, as well as harassment and constructive discharge. Stone also attached the "right to sue" notice, dated June 10, 2013; and a certified letter from the EEOC, dated October 17, 2013, providing that it received an EEOC charge of discrimination from Stone on February 25, 2013. *See* R. Doc. 35-2, pp. 37-29. As such, Stone has established that she has at least filed an EEOC charge, and received a right to sue notice against the Department.

However, Stone does not include a copy of the perfected EEOC charge, nor does she include an intake questionnaire, or any part of the investigatory file from the February 2013 charge, which may indicate the remedial action she wishes to seek. The only document attached making reference to a

---

[9] Although the Court in *Federal Express Corp.,* see *supra,* provided the requirements for an EEOC charge involving an ADEA claim, numerous courts across the country have extended its holding to Title VII. *Asongwe v. Washington Mut. Card Servs. & subsidiaries,* No. 3:09-CV-0668,  2009 WL 2337558 (N.D. Tex. July 29, 2009) (citations omitted).

perfected charge is the notice, which states that "a copy of the perfected charge (EEOC Form 5) will be mailed [] once it has been received from the Charging Party." *See* R. Doc. 26, p. 17.

Even though Stone does not attach a perfected charge to the complaint, the Court finds that this scenario is factually distinguishable from that of *Asongwe,* as discussed above. There, the plaintiff did not attach any formal charge or notice thereof to her complaint, but instead, attempted to use the initial intake questionnaire as evidence of a completed charge. Here, although the Department does not have a copy of the completed charge, it does have a certification that one was filed against it, and the notice thereof, which properly alleges the claims of relief; harassment, discrimination based on race, retaliation and constructive discharge - for which Stone seeks relief. *See* R. Doc. 35-2, p. 27-29.[10] Therefore, the Court finds that Stone has exhausted her administrative remedies as to the filing of a 2013 EEOC charge.

## 2.    Timeliness of the 2013 EEOC Charge

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. However, an employment discrimination plaintiff "must exhaust her administrative remedies before she may pursue claims in federal court." *Elwakin v. Target Media Partners Operating Co., Inc.,* 2012 WL 669068, at *3 (E.D. La. Feb. 29, 2012); *see Porter v. Adams,* 639 F.2d 273, 276 (5th Cir. 1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e(16); *Templeton v. Western Union Tel. Co.,* 607 F. 2d 89, 91 (5th Cir. 1979) (per curiam);  ("[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies.").

---

[10]*See e.g., Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, No. 11-cv-00917, 2012 WL 6721098 (S.D. Ohio Dec. 27, 2012), where the Ohio Court distinguished the ruling of *Asongwe,* finding that an intake questionnaire was enough to help stop the running of prescription on Plaintiff's claims, and establish that Plaintiff had exhausted his administrative remedies, as the questionnaire was construed as a "charge" because it included the address and telephone number of the Defendant, the number of employees that worked for Defendant, and a statement indicating whether Plaintiff had sought the assistance of any government agency regarding the matter, which even absent an affidavit, to be construed as a request for remedial action.

In order to exhaust her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a statutory notice of the "right-to-sue" letter. *Elwakin,* 2012 WL 669068, at *3; *Asongwe v. Washington Mut. Card. Servs. & subsidiaries,* No. 3:09-CV-0668, 2009 WL 2337558 at *3 (N.D. Tex. July 29, 2009). Although the filing of an EEOC Charge is not a jurisdictional prerequisite, it is a precondition to filing suit in district court. *See Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996). And, "§ 2000e-5(f)(1) provides that a civil action must be commenced 'within ninety days' after the charging party has received a 'right-to-sue' letter from the EEOC or state or local agency." *See* 42 U.S.C. § 2000e-5(f)(1); *Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 120 (5th Cir.1980).

The time limit provisions of the Title VII establish the following procedures for filing discrimination charges with the EEOC. As a general rule, a complainant must file a discrimination charge with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. *See* § 706(e) of Title VII, 78 Stat. 260, 42 U.S.C. §2000e-5(e). If a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days. *See e.g., E.E.O.C. v. Commercial Office Products Co.,* 486 U.S. 107 (1988).

As such, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of learning of the alleged unlawful employment action. *Grice v. FMC Technologies Inc.,* 216 Fed. App'x. 401, 405 (5th Cir. 2007); citing *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998); *see also* 42 U.S.C.§ 2000e-5(e)(1). However, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Grice,* 216 Fed. App'x. at 405 (internal citations omitted).

Therefore, an EEOC charge must be filed within the 300-day time period after the discrete discriminatory act occurred, unless there is a showing of the rather unusual circumstance of a "continuing violation." *Nat'l R.R. Pass. Corp. v. Morgan,* 536 U.S. 101, 113, 113 (2002); *Kimble v. Georgia Pac.*

*Corp.*, 245 F. Supp. 2d 862, 870 (M.D. La. 2002) *aff'd,* 67 F. App'x 248 (5th Cir. 2003). *See* 42 U.S.C. § 2000e-5(e)(1); *Celestine v. Petroleos de Venezuela, SA,* 266 F.3d 343, 351 (5th Cir. 2001).[11]

Here, Stone's complaint alleges that the discriminatory acts began in November 2009 and ended on March 31, 2012, when she resigned from her employment. In contrast, her 2013 EEOC charge alleges discriminatory conduct which occurred between August 25, 2010, and April 30, 2012, the same dates which are alleged in her November 22, 2010, EEOC Charge. *See* R. Doc. 35-2, p. 27; *see also* R. Doc. 26-1, p. 4.[12] The record shows that Stone's alleged discrimination ended on March 31, 2012, when she resigned from her employment. *See* R. Doc. 35-2, p. 27. She therefore had 300 days[13] from the last date of this alleged discrimination, or by January 25, 2013, to timely file a charge of discrimination. However, the actual charge was not filed until February 28, 2013, 334 days after the date of the last alleged discriminatory act. Therefore, Stone's 2013 charge of discrimination is untimely filed.

### C.    Merits of the 2010 EEOC Charge

The Department argues that (1) some of Stone's Title VII claims set forth in her amended complaint, were not included in the 2010 EEOC charge, and should be dismissed for failure to exhaust; and (2) for those claims that were included in the 2010 EEOC charge, Stone fails to state a *prima facie*

---

[11]The continuing violation theory would relieve a Plaintiff "of establishing that all of the discriminatory conducted [alleged] occurred within the 300-day period if she could show a series of related acts, with one or more of those acts falling within the limitations period." *Kimble,* 245 F.Supp. 2d, at 870-71; citing *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir.1983). *See also Hendrix v. City of Yazoo City, Miss*., 911 F.2d 1102, 1103-04 (5th Cir.1990); *Rendon v. AT & T Tech*., 883 F.2d 388, 395-96 (5th Cir.1989).

[12]This Circuit's precedent clearly establishes that "in Title VII cases the limitations period starts running when the plaintiff knows of the discriminatory act, not when the plaintiff perceives a discriminatory motive behind the act." *Rivers v. Geithner,* 2013 WL 6623542, at *3 (5th Cir. Dec. 17, 2013); citing *Christopher v. Mobil Oil Corp*., 950 F.2d 1209, 1217 n. 2 (5th Cir.1992) (citing *Merrill v. Southern Methodist University*, 806 F.2d 600, 605 (5th Cir.1986) (emphasis original)); *Chapman v. Homco*, Inc., 886 F.2d 756, 758 (5th Cir.1989); *see also Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) ("Limitation period begins on the date of alleged unlawful employment action.")

[13]In a state that provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the alleged conduct. *Huckabay v. Moore,* 142 F.3d 233 (5th Cir. 1998).

case as for her claims of retaliation, discrimination, harassment, hostile work environment, and defamation and should be dismissed.

### 1.     Stone's Title VII Claims Not Included in Her 2010 EEOC Charges[14]

The Department contends that some of Stone's Title VII claims set forth in her amended complaint were not included in the 2010 EEOC Charges she filed, and should thus be dismissed for failure to exhaust administrative remedies. *See* R. Doc. 30-2, p. 6.

In opposition, Stone contends that the "discriminatory and retaliatory actions" of the Department were ongoing and therefore have been administratively exhausted. *See* R. Doc. 35-1, p. 4. She references the February 2013 EEOC Charge, and the letter certifying the charge, dated October 17, 2013. *Id.* However, she makes no other specific arguments in opposition.

"In order to exhaust her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive notice of right to sue."  *Elwakin,* 2012 WL 669068, at *3. "An employment discrimination suit can be dismissed where it is not based on or related to the specific claims made in the plaintiff's Charge of Discrimination."  *Elwakin,* at *3; quoting *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir. 1992).

In the August, 2010 EEOC charge, Stone alleges race discrimination and harassment. In the November 2010 EEOC charge, she alleges race discrimination, retaliation and harassment against the Department. However, she later amends this charge to include allegations of racial harassment against the Department occurring as late as September 9, 2010. *See* R. Doc. 26-1, p. 4; R. Doc. 26-2, p. 42, 57.

---

[14]Stone filed two EEOC Charges, the first on August 20, 2010, alleging race discrimination and harassment. She filed a subsequent EEOC Charge, on November 30, 2010, alleging race discrimination, retaliation and harassment. *See* R. Doc. 26-2, p. 66, 78.

However, neither of these charges reference her claims of constructive discharge, or disparate impact and / or disparate treatment.[15]

Title VII complaint may only encompass " 'discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.' " *Blanchet v. Chevron / Texaco Corp.,* 368 F. Supp. 2d 589, 602 (E.D. Tex. 2004); citing *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970);

Accordingly, the scope of the complaint is limited to " 'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.' "*Blanchet,* 368 F.Supp.2d at 602; citing *Nat. Ass'n of Gov't Employees*, 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir.1976)); *see Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir.2000); *Clark*, 18 F.3d at 1279–80; *Sanchez*, 431 F.2d at 465–66. Thus, "the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit." *Id.*

 Although the Fifth Circuit has consistently "affirmed the long standing principle that a claim is not reasonably expected to grow out of a plaintiff's EEOC Charge where the claim is not alleged in the charge," the Court has recognized some exceptions to the exhaustion requirement.[16] "First, a Title VII cause of action may be based 'not only on the specific allegations made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial

---

[15]Although Stone's 2013 charge references "constructive discharge" as analyzed earlier in the Court's opinion, the 2013 charge is untimely and shall therefore not be considered by this Court. Stone does not allege disparate impact in either the 2010 or the 2013 charge. *See* R. Doc. 35-2, p. 27.

[16]See *Ellzey v. Catholic Charities Archdiocese of New Orleans*, 833 F.Supp.2d 595, 601 (5th Cir. 2011)*; Kebiro v. Walmart,* 193 Fed. Appx. 365, 367 (5th Cir. 2006).

charges of discrimination.'" *Tropez v. Veneman,* No. Civ. A.03-2156, 2004 WL 1596541, at *5 (E.D. La. July, 16, 2004); (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *see also Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994).

In *Tropez,* this Court cited to the Fifth Circuit's decision in *Clark v. Kraft Foods, Inc.,* for the proposition that where a plaintiff has failed to properly exhaust her administrative remedies before filing suit, this Court lacked proper subject matter jurisdiction to hear the claim. *Tropez,* at *5; *see Clark,* 18 F.3d at 1280. In *Clark,* the plaintiff "filed an administrative charge with the EEOC alleging sexual harassment and retaliation . . . [then before the Court] the plaintiff further alleged disparate treatment on the basis of gender." *Id.* The Fifth Circuit concluded that "the district court had jurisdiction to reach the merits of the claim because an EEOC investigation of the claim was a 'reasonable consequence' of the plaintiff's administrative charge and supporting documentation." *Id.* Further, the Fifth Circuit stated that "the Court has jurisdiction over new acts of discrimination which may have occurred after the first complaint was filed as long as the discriminatory acts are part of the same grievance." *Id. See also Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980).

In applying this principle to the facts in *Tropez*, this Court distinguished the "reasonable consequence" exception from *Clark.* In *Tropez*, the Court found that because Plaintiff did not allege or formally raise any claim of race or sexual discrimination, the agency was not given the opportunity to adjudicate these issues, thereby Plaintiff did not properly exhaust her administrative remedies with respect to the claims she first raised in this Court. *Tropez,* at *5. Accordingly, this Court dismissed these claims for failure to properly exhaust her administrative remedies. (*See also Ellzey v. Catholic Charities Archdiocese of New Orleans,* 833 F. Supp. 2d 595, 600-601 (E.D. La. Jun. 24, 2011) (This Court dismissed Plaintiff's claims for sexual harassment and or retaliatory discharge for failure to exhaust her administrative remedies as the charge Plaintiff filed with the EEOC did not allege sexual or any type of

harassment or retaliatory discharge, which is what Plaintiff's entire case rested on); (*Teffera v. North Texas Tollway Authority*, 121 Fed. App'x. 18, 21 (5th Cir. 2004) (noting that where plaintiff did not check the retaliation box on his EEOC charge, plaintiff did not exhaust his claim with the EEOC and therefore could not bring the claim in a civil action)).

### a.   <u>Disparate Impact</u>

Here, Stone raised "disparate impact" for the first time in the amended complaint she filed on September 12, 2013. *See e.g.,* R. Doc. 26. Although she attempted to assert this claim in the 2013 charge, the Court has already determined that the 2013 charge is untimely and not administratively exhausted. Because this court only has jurisdiction over the claims addressed in Stone's EEOC charge, Stone's assertion of the disparate impact claim now, when she failed to include any allegations of it in either of her 2010 EEOC charges,[17] is fatal to her claim. *See e.g., Jones v. Delta Towing, LLC.,* 512 F. Supp. 2d 479, 486 (E.D. La. 2007) (Zainey, J.); citing *Mills v. Wal-Mart Stores Inc.,* 2002 WL 83644 (E.D. La. 2002) (where a plaintiff's EEOC charge made reference to a hostile work environment claim, but made no mention of retaliation, and plaintiff failed to check any other box to indicate other forms of discrimination, the Court dismissed Plaintiff's retaliation claim based on failure to exhaust the procedural administrative remedies, as the EEOC instructions directed plaintiff to check all boxes of discriminatory acts that may have applied); *see also Gage v. Greer Indus., Inc.,* 2001 WL 1018793, at *2 (N.D. Tex. Aug. 16, 2001) (court found that plaintiff's claim of race discrimination could not be reasonably expected to grow out of her EEOC charge of sexual discrimination and constructive discharge as race discrimination is not "like or related" to the charges presented before the EEOC). As such, the Court finds that Stone's disparate impact claim has not been  administratively exhausted, and must be dismissed.

---

[17] *See supra,* n.4, 16.

### b.    <u>Constructive Discharge</u>

Stone's amended complaint also raises "constructive discharge" as a claim, although it was not raised as a claim in either of her 2010 EEOC Charges. Similar to the Court's decision in *Johnson v. Hospital Corp. of America,* where a plaintiff checked the boxes on the EEOC charge for discrimination based on race and retaliation, describing the discriminatory acts against her as demotion and harassment, but failed to allege or mention constructive discharge or forced resignation as a claim of discrimination, the Court finds that Stone has failed to provide adequate notice to the Department of this claim. Therefore this claim must be dismissed for failure to provide adequate notice and to exhaust administrative remedies. *Johnson,* 767 F.Supp. 2d 678, 700 (W.D. Feb. 11, 2011); *Jones v. Delta Towing,* 512 F. Supp. 2d, 479 (E.D. La. 2007). *See e.g., Blanchet,* 368 F. Supp. 2d at 602 ("Several district courts have recently applied these principles to disallow a variety of claims not raised in the EEOC charge.");(*Harvill v. Westward Communications, LLC.*, 311 F.Supp.2d 573, 585 (E.D.Tex.2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge as constructive discharge does not grow out of harassment allegations); *Stewart v. May Dep't Stores*, 294 F.Supp.2d 841, 848–49 (M.D.La.2003) (precluding the plaintiff, "by the four corners of her document," from asserting race discrimination claim because her EEOC charge did not have the appropriate box checked); *Seppy v. City of Irving*, No. Civ. A. 3:00–CV–386–R, 2002 WL 1592609, at *4 (N.D.Tex. July 18, 2002) (finding that the plaintiff's race, gender, retaliation, and hostile work environment claims were barred because she checked only the national origin and age discrimination boxes on the EEOC charge); *Winegarner v. Dallas County Schools*, 1999 WL 325028, at *2 (N.D.Tex. May 19, 1999) (holding that treatment on the job and constructive discharge are separate and distinct discriminatory events; thus, constructive discharge claim was beyond scope of the charge) (citing *Chester v. American Telephone and Telegraph Co*., 907 F.Supp. 982, 987 (N.D.Tex.1994), *aff'd*, 68 F.3d 470 (5th Cir.1995), *cert. denied*,

516 U.S. 1141 (1996)). As such, the Court finds that Stone's constructive discharge claim has not been administratively exhausted, and must be dismissed.[18]

### 2.    The Merits of the Claims Stone Asserted in Her 2010 EEOC Charge

#### a.    Retaliation & Discrimination

The Department seeks dismissal of Stone's retaliation and discrimination claims because she fails to establish that she suffered from an adverse employment action.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion . . . [] national origin, . . . or because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–2(a)(1), 3(a).

In order to state a claim for retaliation, Stone must allege (1) she was engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

#### 1.    Engaged in a Protected Activity

Here, the parties do not contest that Stone filed an internal complaint with the Department on May 12, 2010, and an EEOC charge on August 12, 2010, alleging race discrimination and retaliation

---

[18]Even if the Court found that Stone had exhausted her constructive discharge claim to assert in this Court, Stone's complaint alludes to, but provides no explanation, argument or authority in support of any constructive-discharge claim she has. It would therefore be waived for failing to state a claim as a matter of law. *See e.g., Brew v. Wyerhaeuser NR Co.,* — Fed. App'x. — , 2013 WL 3322257, at *3 (5th Cir. July 2, 2013); (quoting *United States v. Scroggins,* 599 F.3d 433, 446 (5th Cir. 2010)).

against the Department for Lockley's discriminatory treatment of Stone.  *See* R. Doc. 26-2, p. 47-52.[19] Therefore, Stone has satisfied the first element of her *prima facie* case of retaliation.

## 2.   Suffered an Adverse Employment Action

As to (2), the Fifth Circuit has analyzed the "adverse employment action" element in a stricter sense than some other circuits to include only "ultimate" employment decisions, "such as hiring, granting leave, discharging, promoting, and compensating." *Langley v. Dept. of Interior,*  2001 WL 392497, at *6 (E.D. La. Apr. 18, 2001). *See Harrison v. Corrections Corporation of America*, 476 F. App'x 40, 45 (5th Cir. 2012); *Kent v. Vicksburg Healthcare, LLC*, 2012 WL 1556511, at *12 (S.D. Miss. Apr. 30, 2012) ("[D]ismissal is obviously an adverse employment action."); (*McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007); *Turner v. Novartis Pharmaceuticals*, 2011 WL 901022, at *5 (E.D.La. Mar. 11, 2011) (Roby, M.J.) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

As such, an adverse employment action, for purposes of Title VII, does not include decisions made by an employer that serve only to limit an employee's opportunities for promotion but do not affect his job duties, compensation, or benefits. *Banks v. E. Baton Rouge Parish Sc. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Davis v. Miss. Transp. Comm'n,* 618 F. Supp.2d 559, 564 (S.D. Miss. 2009). Title VII also does not intend to include other employment-related decisions that may "have some tangential effect on an ultimate employment decision, but are not ultimate employment decisions in and of themselves." *Jeffrey v. Dallas County Medical Examiner,* 37 F. Supp. 2d 525, 529 (N.D. Tex. 1999); (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997).        The Fifth Circuit has provided several examples of allegations that do not amount to an ultimate employment

---

[19]As to (1), "protected activities" include opposition of any unlawful employment practice, or, in connection with a Title VII proceeding, such as making a charge, testifying, assisting or participating in an investigation, proceeding, or hearing." *See* 42 U.S.C. § 2000e–3(a); *Douglas v. DynDermott Petroleum Op. Co.*, 144 F.3d 364, 372 (5th Cir. 1998).

decision. For example, hostility from fellow employees, having personal items stolen and the aftermath of such behavior does not amount to an ultimate employment decision. *Jeffrey,* 37 F. Supp. at 529; *Mattern,* 104 F.3d at 707. Denial of "administrative complaints and internal grievances," as well as informal criticisms, or changing an employee's work schedule or hours are "merely administrative decisions" that do not constitute an "ultimate employment decision as contemplated by Title VII." *Id.* *See Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998). However, formal reprimands that lead to termination or directly effect an employees compensation and or benefits, may constitute ultimate employment decisions. *Id.*

Here, Stone does not allege sufficient facts that she suffered an adverse employment action while employed at the Department. "To constitute prohibited retaliation, an employment action must be materially adverse, one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination'." *See Stewart v. Miss. Transp. Com'n,* 586 F.3d 321, 331 (5th Cir. 2009); citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'." *Id.* As such, even if an adverse action is intended by the employer as retaliation, it must still satisfy this materiality standard. *Stewart,* 586 F.3d at 331; citing *White*, 548 U.S. at 67-68 (explaining that Title VII's anti-retaliation provision "protects an individual from not all retaliation").

Here, Stone alleges that Lockley, who is an African American, and was also her New Orleans supervisor, displayed conduct toward her which amounted to retaliation, when she allegedly singled her out by not giving her credit for all of her audited cases, returned her audit cases too late to be counted toward her end of the year production number, by allegedly making racially derogatory comments about African Americans being lazy and slow, and by giving desk audits which had "lower assets than those

assigned to another white employee, Annette Broadway." *See* R. Doc. 26, p. 5-8.  As a matter of law, these allegations do not rise to the level of material adversity necessary to establish an adverse employment action.

Instead, these accusations fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that the Supreme Court has recognized are not actionable retaliatory conduct. *Stewart,* 586 F.3d 321, 332; citing *White*, 548 U.S. at 68. Because Title VII "does not set forth 'a general civility code for the American workplace,'" these actions would not and did not dissuade Stone from making a charge of discrimination. *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

Stone also characterizes Lockley's accusations that she misplaced a client's "waiver of prescription" form in July 2010 as retaliation, and an attempt to alter her telecommuting privileges as well as halt her approved transfer to Houston, Texas office. *See* R. Doc. 26-2, p. 47. Stone also contended that Lockley's attempt to stop and/or slow down her transfer and alter her telecommuting privileges amounted to what she characterizes as hostile work environment. *Id.* at 7, 13, 25. Much like the analysis of the claims made before her internal grievance was filed, Stone's categorization of Lockley's "accusation" is not enough to amount to an "ultimate employment decision" as Stone was still permitted to transfer to Houston, and continued telecommuting even in light of what she believed was retaliatory conduct.

Stone also alleges that Thomas, her Texas supervisor, attempted to halt her requests for leave by requiring her to provide documentation from a doctor after requesting sick leave. However, the evidence supports that Stone's supervisor sought documentation because of the numerous leave requests she submitted days in advance of the time she was ill. Furthermore, the email communications between Thomas and Stone evidence that she was not denied any leave requests, rather she was asked to provide documentation for future sick leave requests because of the volume of the requests.

26

Lastly, Stone voluntarily resigned from the Department by a second letter, dated March 26, 2012, which provided that her final day would be April 9, 2012. Although Stone attempts to construe her resignation as a constructive discharge, which would amount to an adverse employment action,[20] Stone fails to include any such allegations in her EEOC charge. Aside from constructive discharge, Stone's allegations do not amount to an adverse employment action that could serve as a basis of either a retaliation or race discrimination claim. Thus, the Court finds that Stone has failed to state a prima facie claim of retaliation as a matter of law. Having determined that the second factor necessary to state a claim of retaliation has not been met, the Court does not reach the third factor. Because an adverse employment action is also necessary to establish a successful claim of race discrimination, the Court finds that Stone fails to establish a prima facie case of both retaliation and race discrimination.

### b.    Racial Harassment

The Department seeks dismissal of Stone's harassment claims on the grounds that she was not subjected to unwelcome harassment based on race, as her supervisor was also African American. The Department also seeks dismissal on the grounds that Stone fails to allege any affect on a term, condition, or privilege of her employment as a result of the alleged harassment being objectively offensive, hostile or abusive. *See* R. Doc. 30-2, p. 7-8.

A plaintiff may establish a Title VII violation based on racial harassment / discrimination creating a hostile work environment. *Carrera v. Commercial Coating Serv's Intern., Limited,* 422 Fed. Appx. 334, 337 (5th Cir. Apr. 14, 2011); citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002). "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so,

---

[20]Constructive discharge is an adverse employment action for which a Title VII plaintiff may use to establish a *prima facie* case of retaliation. In order to do so, plaintiff "must prove that 'working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.' " *Harvill,* at 440; citing *Landgraf v. USI Film Products*, 968 F.2d 427, 429-30 (5th Cir.1992) (quoting *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980)).

a complainant must establish a prima facie case that (1) they belong to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) that the Department knew or should have known of the harassment and failed to take prompt remedial action. *Carrera,* 422 Fed. App'x. at 337; *Ramsey,* 286 F.3d at 268.

The well-established five part test was revised by the Supreme Court ruling that "in Title VII harassment cases, where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353-54; citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Once the plaintiff makes the four-part showing that they have been harassed by a supervisor, the "employer is subject to vicarious liability to a victimized employee" for the supervisor's conduct. *Id.*

Here, because Lockley was one of Stone's supervisor, the Court shall apply the four part test. As stated above, the parties do not contest that as an African American, Stone is a member of a protected class. However, Stone provides nothing more than unsubstantiated, vague allegations that she suffered from racial harassment from her supervisor, Lockley. Specifically, Stone alleges that Lockley "singled her out" by asking her to reduce her non-audit hours, when she was believed to be on the proper progress track.  *See* R. Doc. 26-1, p. 12, 13, 19. Stone also alleges that before her transfer to the Houston office was completed, Lockley accused her of losing a client's "waiver of prescription form," and for failing to complete several time-sensitive assignments, in an attempt to stop and/or slow down her transfer to Houston and alter her telecommuting privileges. *See* R. Doc. 26-2, p. 7, 13, 25.

As the Department contends, Stone has failed to establish that the alleged harassment affected a term or condition of her employment. To affect a term or condition of employment, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive [or hostile] working environment." *Carrera,* at 337; *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).[21] This determination requires that we apply a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Carrera*, at 337; *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir.2007)); see also *Elwakin,* 901 F. Supp. 2d at 753; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The conduct complained of must be either severe or pervasive, but need not be both. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434–35 (5th Cir. 2005).

Stone alleges that she was humiliated by Lockley, Lockhart, and Clark, when they publically searched through the files in her office, allegedly looking for the waiver of prescription form. *See* R. Doc. 26, p. 7, 13. Stone also seems to correlate her reduced number of telecommuting hours while in the Houston, Texas office to her local supervisor's relationship with Lockley, which she believes constitutes

---

[21]Courts have cautioned that "[t]he mere utterance of an ... epithet which engenders offensive feelings is not enough" to establish a hostile work environment. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. "A recurring point in [Title VII] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Elwakin,* 901 F.Supp.2d at 753; *Faragher,* 524 U.S. at 788 (internal quotation marks omitted). *See also DeAngelis*, 51 F.3d at 594 (finding that specific attempts to target the plaintiff with boorish, chauvinistic language were set in the context of an attempt at "humor").

Courts in the Fifth Circuit have found that hostile work environment claims must be constant and pervasive, and isolated incidents do not qualify. *Elwakin*, at 753-54; *see e.g., Hernandez v. Yellow Transportation, Inc*., 670 F.3d 644 (5th Cir. 2012) (finding no hostile work environment where, over ten-year period, employee was called a racially derogatory term on one occasion and saw a poster or letter derogatory towards hispanics on another); *Jones v. Continental Cuisine, Inc.*, 353 F.Supp.2d 716, 720 (E.D.La.2004) (finding no hostile work environment from one use of the tern "N__"). In sum, "[w]hile a single or an isolated incident can give rise to [a] ... claim if it is severe enough, these claims are rare and usually involve physical violence." *Melson v. Chetofield*, No. 08–3683, 2009 WL 537457, at *4 (E.D.La. Mar. 4, 2009) (Vance, J.). Even a series of utterances, without more, is unlikely to qualify as a hostile work environment. *Cuthbertson v. Am. Fed. of Gov't Employees,* 2012 WL 4321742, at *3 (N.D. Tex. Sept. 21, 2012) (finding that three statements in which employee's mentor referred to him as a "young white boy," that he had only gotten his job "because [he is] white," and that one "can't trust a white committee because the white guys are always out to steal money from the local" were insufficient to demonstrate a hostile work environment).

her claim that Lockley's racial harassment was so severe that it constituted a hostile work environment. These allegations however, do not amount to constant, pervasive activities as required by the Fifth Circuit. If anything, Stone's allegations represent isolated events of disagreement between she and her supervisor, which fail to state a claim of harassment, or of a hostile work environment that may constitute harassment as a matter of law.[22] *Elwakin*, at 753-54; *see e.g., Hernandez v. Yellow Transportation, Inc*., 670 F.3d 644 (5th Cir. 2012).

Here, Stone fails to establish that she was subjected to unwelcome harassment which was based on her race. The evidence also supports that any alleged harassing activities that took place did not affect Stone's employment, as she was not only permitted to transfer to the Houston, Texas office upon request, but also still allowed telecommuting privileges through her time at the Houston, Texas office. As such, the Court finds that Stone has failed to state a claim as to her harassment claim.

### 3.      Stone's State-Law Defamation Claim

The Department seeks dismissal of Stone's defamation claim for failing to state a claim upon which relief may be granted. Here, Stone alleges that she suffered from defamation due to the Department allegedly giving her poor references. *See* R. Doc. 26, p. 9. Specifically, she alleges that during her job interview with the Mobile, Alabama Department of Treasury, she was "frowned at" when the interviewer referenced the New Orleans, Louisiana office. *Id.* Based on the alleged facial gesture, she assumes that the Department's New Orleans office made defamatory statements about her character.

---

[22]To properly allege a claim for hostile work environment under Title VII, a party must prove "(1) [racially] discriminatory intimidation, ridicule and insults which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment." *Elwakin v. Target Media Partners Operating Co., LLC.,* 2013 WL 2443790, at *11 (E.D. La. June 4, 2013); *DeAngelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) (finding that four printed derogatory references directed specifically at plaintiff at irregular intervals over two and a half years did not constitute sufficient hostility as a matter of law); *Cavalier v. Clearlake Rehabilitation Hospital, Inc.*, 2008 WL 2047997, at *4–*5 (S.D.Tex. May 12, 2008) (extending DeAngelis hostile work environment test to case involving allegations of racial discrimination). Moreover, the employer must have actual or constructive knowledge of the discrimination. *Elwakin,* 2013 WL 2443790, at *11; *Jones v. Flagship Int'l,* 793 F.2d 714, 721 (5th Cir. 1986).

Louisiana defines defamation as "a tort involving the invasion of a person's interest in his or her reputation and good name." *Fietz*, 484 F. Supp. 2d at 549; *Kennedy v. Sheriff of East Baton Rouge*, 2005–1418 (La.7/10/06), 935 So.2d 669, *citing Costello v. Hardy*, 03–1146 (La.1/21/04), 864 So.2d 129. "Statements are defamatory only if the words, taken in context, tend to injure the person's reputation, to expose the person to public ridicule, to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation." *Davis v. Borskey*, 660 So.2d 17, 22 (La.1995).

In order to establish a claim for defamation in Louisiana, plaintiffs must prove: "1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault (negligence or greater) on the part of the publisher; and 4) resulting injury." *Id.* Fault is malice, actual or implied. *Id.* As stated above, Stone characterizes the interviewer's reaction as evidence that the New Orleans office gave her a poor reference, which she assumes amounts to "defamation or something." *See* R. Doc. 26, p. 9.

Because of the liberal pleading standard of Rule 12(b)(6), the Court finds that Stone has at least alleged a prima facie case of defamation, as she contends that the Department, made an allegedly false statement, by giving her a poor reference to a third party, which has resulted in an injury.

However, defamation is a state law cause of action, for which this Court has supplemental jurisdiction over, pursuant to 28 U.S.C. § 1367. Federal court jurisdiction over pendent state-law claims is "now governed by 28 U.S.C. § 1367, which provides that in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992); citing 28 U.S.C.§ 1367(a) (West Supp.1992).

Under § 1367(c)(3), "the district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction." *Id.* Because this Court is dismissing the remainder of Stone's claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Stone's remaining state-law defamation claim. *Rhyne,* 973 F.2d at 395; *see also Noble v. White*, 996 F.2d 797 (5th Cir. 1993) (where the Fifth Circuit held that a district court was justified in declining to exercise its supplemental jurisdiction over state law claims). Therefore Stone's defamation claim is dismissed without prejudice, but may be filed in an appropriate state court tribunal.

## IV.  <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Department of Revenue's ("Department")**Motion to Dismiss, Alternatively, Motion for Summary Judgment (R. Doc. 30)** is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS DENIED** as to the Department's motion to dismiss based on res judicata.

**IT IS FURTHER DENIED** as to the Department's motion to dismiss based on failure to exhaust based on the proof of the 2013 EEOC Charge.

**IT IS GRANTED** as to all claims asserted in Plaintiff, Joanne Stone's 2013 EEOC Charge based on prescription.

**IT IS FURTHER GRANTED** as to Plaintiff, Joanne Stone's claims of disparate impact and constructive discharge, as raised in the 2013 EEOC charge, for failure to exhaust.

**IT IS FURTHER GRANTED** as to Plaintiff, Joanne Stone's claims of retaliation, race discrimination and harassment, as raised in the 2010 EEOC charge, for failing to state a prima facie claim.

**IT IS FURTHER ORDERED** that this Court is declining to exercise jurisdiction over Plaintiff, Joanne Stone's state law claim of defamation. Therefore Stone's claim of defamation is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 12th day of February, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**