## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOANNE STONE** | **CIVIL ACTION** |
| **VERSUS** | **NO:    12-3022** |
| **LOUISIANA DEPARTMENT OF REVENUE** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

### <u>ORDER & REASONS</u>

Before the Court is the Louisiana Department of Revenue's ("Department") **Motion for Summary Judgment (R. Doc. 78)** seeking an Order from the Court to dismiss Joanne Stone's remaining Title VII retaliation claim and her state law defamation claim. The motion is opposed. R. Doc. 93. The Department also filed a reply memorandum to the opposition R. Doc. 96.

### I.       <u>Factual Background</u>

Joanne Stone, the Plaintiff, is an African-American woman who worked as a Revenue Tax Auditor II for the Louisiana Department of Revenue. Stone initially worked in the New Orleans office from July 17, 2001, until August 23, 2010. Sometime between August 23, 2010, and September 7, 2010, [1] she transferred to the Department's Houston, Texas, office where she worked until she resigned on March 26, 2012. On August 12, 2010, Stone filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation against the Department. *See* R. Doc. 35-2, p. 27. She later amended her complaint to include a claim for harassment based on her race on December 7, 2010. Stone was issued a right to sue letter on September 20, 2012, and timely filed suit in this Court on December 20, 2012. *See* R. Doc. 1, p. 14.

---

[1] The exact date that Stone transferred is not mentioned in the record. However, counsel agreed to a stipulation that Stone's start date was sometime between August 23, 2010, and September 7, 2010.  R. Doc. 78-3, p. 69.

Stone alleges that while employed by the Department her supervisor, Vendetta Lockley, who is also an African-American woman, harassed her by questioning her ability to meet deadlines, failing to give her credit for audits that she completed, giving her "desk audits" which had lower assets than those assigned to her white colleagues, not approving audit hours in time to be counted towards her year-end production numbers, and accusing her of losing paperwork. Stone alleges that Lockley's discrimination against her became so intense that she filed an internal grievance with the Department on May 12, 2010, which was mitigated because the Department arranged a transfer for Stone to the Houston office.

Stone also alleges that Lockley created a hostile work environment when she accused her of losing an audit document and that she purposely delayed her transfer to the Houston office. Once in the Houston office, Stone alleges that her telecommuting days were reduced from the three days per week that she had in New Orleans to one day per week in Houston. Stone contends that Lockley caused the decreased telecommute hours. *See* R. Doc. 26, p. 13-14.

Stone later requested an out-of-state position near her home in Mobile, Alabama. Her request was denied. Stone alleges that the denial was based on her race as similar requests from white employees were granted. *See* R. Doc. 26-1, p. 112. Stone claims that she was forced to resign on March 26, 2012, because of continued harassment and hostile work conditions. She later filed a second EEOC charge on February 28, 2013, alleging race discrimination, retaliation, constructive discharge, and harassment for the same dates she alleged in the first charge.[2]

On October 4, 2013, the Department filed a Motion to Dismiss (R. Doc. 30) seeking an Order to dismiss Stone's claims arguing that they: (1) were barred by *res judicata*; (2) Stone failed to establish a *prima facie* case for each claim; and (3) she failed to exhaust her

---

[2] The EEOC concluded its investigation and issued a Notice of Right to sue on June 10, 2013. The Notice state that the EEOC closed the charge because the "charging party has filed suit in federal court." Doc. 35-2, p. 29.

administrative remedies. *See* R. Doc. 30. The Court granted the Department's motion finding that Stone failed to state a claim pursuant to Rule 12(b)(6) and dismissed the action. R. Doc. 41.

Stone sought review from the United States Court of Appeal for the Fifth Circuit. The Fifth Circuit affirmed the Court's dismissal of Stone's discrimination and harassment claims but reversed and remanded Stone's retaliation and defamation claims. *See* R. Doc. 66-1, p. 15. The Fifth Circuit limited Stone's retaliation claim to events that occurred after May 2010.[3]

As to the instant motion, the Department seeks dismissal of Stone's remaining retaliation and defamation claim. It argues that Stone's defamation claim must be dismissed because: (1) she fails to allege that a Department employee made a defamatory statement; (2) the Department, as Stone's former employer, is immune from civil liability for disclosure of information regarding her prior employment to a prospective employer unless the statement was knowingly false and deliberately misleading; and (3) Stone has not established that the Department provided any statement regarding her employment to a prospective employer. R. Doc. 78-2, p. 4-5. With respect to her retaliation claim, the Department argues that Stone: (1) has not established that Lockley had knowledge of her prior Title VII protected activity (i.e. the filing of her discrimination grievance) and (2) did not experience an adverse employment action while employed by the Department. *Id.* at 7-9.

In opposition, Stone contends that: (1) her defamation claim has not been "processed fully through discovery" and that her deposition transcript which is attached to the Department's instant motion is "still under consideration"; (2) Lockley knew that Stone lodged a discrimination grievance against her; (3) she was the victim of an adverse employment action

---

[3] The Fifth Circuit determined that "[t]he majority of Stone's allegations supporting her claim for retaliation occurred prior to her filing an internal grievance in May 2010 and the EEOC charge in August 2010. Any facts claimed as retaliation prior to May 2010 do not have a causal connection between the protected activity and the adverse employment action." R. Doc. 66-1, p. 14.

when Lockley restricted her telecommute days, incorrectly claimed that some of her audits were late, and delayed her transfer to the Houston office, and (4) the Department has withheld discovery regarding her job performance and evaluation. R. Doc. 93, p. 1-3.

## II.    Standard of Review

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548 (1986). In such a case the moving party must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. The moving party's burden is therefore "understandably

heavier" where that party is the plaintiff. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Though the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254.

Moreover, credibility determinations have no place in summary judgment proceedings. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987). The non-movant's summary judgment evidence must be taken as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A Court view facts in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994). If the non-movant sets forth specific facts in support of allegations essential to her claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. *Id.* Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be

inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winters v. Highlands Insurance Company*, 569 F.2d 297, 299 (5th Cir. 1978). "'(T)he choice between permissible inferences is for the trier of facts.'" *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978). Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts. *Id.*

**III.     Analysis**

**A.     Defamation**

The Department argues that: (1) Stone's complaint fails to identify a defamatory statement; (2) there is no admissible evidence that the Department knowingly made statements that were false and conveyed with the intention to mislead or deceive the recipient; and (3) Stone has not provided evidence that anyone within the Department provided statements to her prospective employers. R. Doc. 78-2, p. 3-6.

In opposition, Stone contends that her defamation claim still needs additional discovery and that her deposition transcript which is attached to the Department's instant motion is "still under consideration." R. Doc. 93-1, p. 2. Further, she argues that pursuant to Federal Rule of Civil Procedure 56(d) when supported by an affidavit as to why she, as the nonmovant, cannot present facts essential to justify her opposition, the Court may: (1) defer considering the motion or deny it, (2) allow time to obtain affidavit or declarations or to take discovery, or (3) issue any other appropriate order. R. Doc. 93-1, p. 4.

The Department also submitted a reply memorandum to support the subject instant motion. It argues that Stone's contention that additional discovery must occur before the Court rules on her defamation claim is unfounded because she has taken at least six depositions and propounded numerous discovery requests since the matter was remanded from the Fifth Circuit.

R. Doc. 96, p. 3. It also notes that Stone has conducted five depositions of her potential employers who have all testified that they did not call the Department for employment information regarding Stone. *Id.* at 4.

As an initial point, the Court is not persuaded by Stone's argument that because discovery has not been completed in this case, Federal Rule of Civil Procedure 56(d) should apply. This rule states that: [i[f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. Civ. P. 56(d). Stone has not provided an affidavit nor has she presented any declaration providing an explanation as to why she cannot present facts to justify her position.

The record reflects that Stone's defamation and retaliation claims were remanded from the Fifth Circuit on December 17, 2014. R. Doc. 66. Discovery on these claims ensued with August 11, 2015 deadline. *See* R. Docs. 62; 68. Stone filed a Motion to Continue Trial and All Dates (R. Doc. 71) on August 1, 2015, and thereafter the Court extended the discovery period until January 12, 2016. R. Doc. 73. The discovery period was extended again to September 21, 2016, after Stone's previous counsel withdrew. R. Doc. 92. Neither party has filed a discovery motion to bring a dispute to the Court's attention since remand. Stone undoubtedly has had ample time to conduct discovery and the Court is not persuaded by Stone's argument that her defamation claim has not been fully processed through discovery.  The Court will now address the substance of Stone's defamation claim.

Under Louisiana law, Stone must prove the following four elements to establish a *prima facie case* for defamation: (1) a false and defamatory statement concerning another; (2) an

unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the defendant; and (4) resulting injury. *See Bellard v. Gautreaux,* 675 F.3d 454, 461 (5th Cir. 2012). (citing *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004)). If even one of the required elements is lacking, the cause of action fails. *Cooksey v. Steward*, 938 So. 2d (La.App.2d 2006).

Further, under Louisiana revised statute 23:291(a) "any employer that, upon request by a prospective employer or a current or former employee, provides accurate information about a current or former employee's job performance or reasons for separation shall be immune from civil liability and other consequences of such disclosure provided such employer is not acting in bad faith. An employer shall be considered to be acting in bad faith only if it can be shown by a preponderance of the evidence that the information disclosed was knowingly false and deliberately misleading." La R.S. 23:291(a).

Thus, "communications between a former employer and prospective employers of an employee enjoy a conditional or qualified privilege, and such a communication is not actionable when made in good faith for legitimate purposes." *Butler v. Folger Coffee Co.*, 524 So.2d 206 (La.App. 4th Cir. 1988). A "good faith" statement, privileged from a claim of defamation, is defined as a statement made with reasonable grounds for believing its truth; only when lack of such reasonable grounds is found can it be said that the person uttering the statement is actuated by malice or ill will. *Chapman v. Ebeling*, 945 So.2d 222, 228 (La.App. 2d Cir. 2006).

For example, in *Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012), Plaintiff was dismissed from a sheriff training program for falling asleep in class and allegedly making inappropriate sexual comments. *Id.* at 457. He requested a name clearing hearing but was denied. Thereafter, Plaintiff filed suit against the Sheriff. He claimed that the Sheriff defamed him by telling people, including the Chief of Police of the Baton Rouge Police Department which was a

prospective employer, outside of the Sheriff's Office about his sexual harassment allegation. *Id.* at 459. The District Court summarily dismissed the defamation claim and the Fifth Circuit affirmed. The Fifth Circuit reasoned, in part, that "any information relayed to [the Police Department] by the Sheriff's office personally is protected under Louisiana law which protected information provided by a former employer to a prospective employer." *Id.* at 465.

Similarly, in *Livingston v. Gavilo*, 2006 WL 37029, at *4 (W.D. La. Jan. 5, 2006), the United States District Court for the Western District of Louisiana held that the Plaintiff failed to establish that her former employer acted in bad faith when she gave an unfavorable evaluation to her prospective employer. There, the Plaintiff was terminated from her job teaching parenting classes for a non-profit organization. *Id.* at *1. She was terminated because of discrepancies in her time records. *Id.* After her termination, the former employer provided an employment reference to her prospective employer that she was terminated because of the time sheet discrepancies. *Id.* at 2. In applying the subject Louisiana statute, the Court reasoned that the Plaintiff "has not demonstrated that [the former employer] relied on inaccurate information when she provided a reference to the [prospective employer], nor that [the reference] was knowingly false and deliberately misleading. *Id.* at *4.

Here, Stone claims that she suffered from defamation due to the Department, in particular Vendetta Lockley, giving poor references to her prospective employers which resulted in her not being hired for positions she sought. R. Doc. 78-3, p. 82. Stone paid two reference-checking companies,[4] in particular CheckYouReference.com, to call the Department to assess what her references may have been to prospective employers. She states that Lockley told the reference

---

[4] Stone was unable to recall the name of the second reference checking company. *See* R. Doc. 78-3, p. 85-87. Stone stated that a "reference checker is a company that you can, you know, tell them to call your employer and just get a reference on you, just to see what they say or what they may be indicating to your future employers." *Id.* at 82.

checker that she lacked organizational skills. R. Doc. 78-3, p. 82.  She further alleges that during her job interview with the Mobile, Alabama Department of Treasury the interviewer "frowned" and "shook his head"[5] when he referred to the reference he received from the New Orleans Office regarding her. She suspects that the negative reception she received from the interviewer reveals that personnel in the New Orleans Office gave her an unfavorable reference. However, Stone also stated that she does not have written documentation as to who the interviewer spoke to or the statements that he received.[6]

Moreover, Stone stated that during her interview for a position with a company that does account payables for McDonalds, the interviewer mentioned that the position only requires organizational skills. R. Doc. 78-3, p. 95.[7] Given that the reference checker that she hired reported that Lockley stated that she lacked organizational skills, Stones suspects that interviewer's reference to organizational skills as a job requirement is an indication that Lockley continued to tell prospective employers that she was disorganized. *Id.* [8]

The record reflects that Lockley repeatedly stated that she considered Stone to be disorganized. An example is Stone's state employee performance planning and review (PPR) form. The form which is dated August 19, 2010, shows that Lockley reported that Stone

---

[5] R. Doc. 78-3, p. 91.

[6] "Q. Has he [the interviewer with the Mobile, Alabama Department of Treasury] ever told you a name of the persons he spoke with on this phone call? A. He said 'New Orleans Office.' He didn't give a name" R. Doc. 78-3. p. 95.

[7] "So when I went on this interview, he was like, "All you have to do for this job is just have organizational skills. And that's an easy job. You just have to be organized to do it. So he was referring to the same thing that is listed on the actual reference checker, that they said on there when they spoke to Vendetta." *Id.* at 95.

[8] "Q. Has anybody told you about any reference checks they've made to the Louisiana Department of Revenue or your former supervisor at the Department of Revenue?  A. Oh, yes. This, I guess, Al Sessions, he told me that he called the number on the application and – you know, he's like making all these signs and faces and doing, you know, all of this (indicating). And he said, you know, 'I called the number in New Orleans,' you know and he was making faces, showing discontent, disdain, you know." R. Doc. 78-3, p. 89.

completed a complex audit and that, although it appeared that she grasped the concepts, as the audit progressed her performance declined as there was an increase in mistakes and disorganization in the presentation of data. R. Doc. 78-9, p. 3.

Stone received a 330 rating score for the reporting period which put her on the high-end of the "Solid Sustained Performance"[9] tier which is the third tier of five performance tiers. The tiers above "Solid Sustained Performance" are "Outstanding" and "Exceeds Expectations." R. Doc. 78-9, p. 18. The rating tiers below "Solid Sustained Performance" are "Needs Improvement" and "Poor." *Id.* A score of 330 essentially means that Stone was an average employee. Lockley repeated her view that Stone lacked organizational skills to Rex Christensen who is an investigation agent with CheckYourReference.com on October 14, 2013. R. Doc. 78-11, p. 2. In response to the question, "Can you describe some areas where there may be room for improvement?", Lockley stated, "I would say organization skills, She wasn't as organized as I would have liked her to be." R. Doc. 78-11, p. 4.

In total, the record reflects that Lockley, when prompted, provided her evaluation of Stone's work performance in good faith. Outside of Stone's conjectures, the record is void of any evidence that Lockley or any other person with the Department provided statements that were knowingly false and deliberately misleading. The Court finds that under these circumstances, Stone has not created a genuine issue of fact that the Department acted in bad faith. Therefore, the state law defamation claim is summarily dismissed with prejudice.

**B.**   **Retaliation**

The Department argues that the record is void of evidence that Stone engaged in any activity protected by Title VII prior to the alleged retaliatory incidents. R. Doc. 78-2, p. at 7. It further argues that Stone did not face retaliation, as it was she who requested relocation to the

---

[9] The numerical scale for the "Solid Sustained Performance" tier is 250 points to 349 points.

Houston office and agreed to delay her relocation because of illness and the need to complete her New Orleans files before leaving. *Id.* at 7-8. Furthermore, it asserts that Stone never faced an adverse employment action as Lockley gave her a "Solid Sustained Performance" and recommended her for a merit increase which, the Department argues, is evidence of her trying to advance rather than hinder Stone's professional development. *Id.* at 8. Lastly, the Department argues that Stone's claim is filled with "workplace criticisms and job scrutiny" that do not rise to the level of an adverse employment action for the purpose of a retaliation claim. *Id.* at 9-10.[10]

In response, Stone contends that during her deposition she testified that Lockley retaliated against her for filing her EEOC grievance by restricting her telecommute days and incorrectly claiming that some of her audits were late. R. Doc. 93, p. 2. Stone also argues that contrary to the Department's position, it caused the delay in her transfer to the Houston office. *Id.* Further, Stone contends that Lockley testified that she knew of the grievance that Stone filed against her. *Id.* Stone also argues that the Department has failed to respond fully to her discovery requests regarding: (1) a rating level of 3 compared with rating levels of 4 for paid raises and promotions and (2) her request for production for audited cases in which the Department gave her credit, those in which she did not receive credit, and those that were not returned in time of her end of the year production numbers. R. Doc. 93, p. 1.

Title VII prohibits retaliation against employees who engage in protected conduct," such as filing a charge of harassment or discrimination. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). To prevail on a Title VII retaliation claim, the Stone must establish that (1) that she participated in an activity protected by the Title VII; (2) that her employer took an

---

[10] The Department filed a reply memorandum in which it reasserts that there is no evidence that the prior formal grievance involved any accusation of Title VII discrimination or that Lockley had knowledge of Stone's original formal inter-departmental grievance which is the only possible grievance that forms the basis of her remaining retaliation claim. Further, the Plaintiff has failed to provide evidence that the subject grievance involved any alleged Title VII discrimination to serve as the basis of her retaliation claim. R. Doc. 96, p. 1-3.

adverse employment action against them; and (3) that her participation in the protected activity caused the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651-652 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). If the plaintiff establishes all three elements, then the burden shifts to the employer to show a legitimate and non-retaliatory reason for its adverse employment action. If the employer can show a legitimate and non-retaliatory reason, then the burden shifts back to the plaintiff to demonstrate that the employer's reasoning for the adverse employment action is pretext for retaliation against the plaintiff. *Pineda v. United Parcel Ser., Inc.*, 360 F.3d 483, 486–87 (5th Cir. 2004).

Under Title VII, a plaintiff may engage in protected activity if she may make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII. *Id.* An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim." *Tureaud v. Grambling State Univ.*, 294 Fed.Appx. 909, 914-15 (5th Cir. 2008). "To establish a causal link between the protected activity and the adverse employment decision, the evidence must demonstrate that the decision maker had knowledge of the protected activity." *Id.* Here, Stone engaged in a protected activity by filing an internal complaint with the Department on May 12, 2010, and an EEOC charge on August 12, 2010.[11]

Moreover, for purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of

---

[11] "An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim." *Tureaud v. Grambling State Univ.*, 294 Fed.Appx. 909, 914-15 (5th Cir. 2008).

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Normally, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 68.

Further, the Fifth Circuit has limited actionable retaliatory conduct to mean "ultimate employment decision" such as "such as hiring, granting leave, discharging, promoting, and compensating." *McCoy v. City of Shreveport,* 492 F.3d 551, 559 (5th Cir.2007).[12] An employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). Allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions. *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)).

The record is unclear as to whether Lockley had knowledge that Stone engaged in the protected activity of filing a grievance against her for discrimination, as Lockley's deposition transcript which is cited in Stone's opposition is not in the record.[13]

However, irrespective of whether Lockley knew that Stone complained of discrimination, the facts at issue turn on the second element – whether she suffered an adverse employment action (i.e. whether Lockley retaliated against Stone by hindering her professional development, impeding her transfer to the Houston office, and limiting her telecommuting privileges).

---

[12] Major changes in compensation, duties, and responsibilities constitute ultimate employment actions. *Pegram*, 361 F.3d at 282 n. 8 (citing *Hunt v. Rapides Health Care Sys., LLC*, 277 F.3d 757, 770 (5th Cir.2001)).

[13] The Department argues that: "Plaintiff cites pages nine and ten of Mrs. Lockley's deposition to argue that she had knowledge of plaintiff original formal grievance. However, plaintiff's counsel at Mrs. Lockley's deposition never clarified which of plaintiff's many grievances she had been informed of." R. Doc. 96, p. 2.

Here, Stone has not established that she suffered an adverse employment action while employed by the Department. As noted above, to constitute an adverse employment action the act must be materially adverse that would dissuade a reasonable worker from making or supporting a charge of discrimination. Regarding events that occurred after May 2010, Stone alleges that Lockley retaliated against her by not giving her credit for all of her audited cases, delayed her transfer to Houston, purposely delayed in returning audit cases to her in an effort to affect negatively her end-of-the-year production numbers, and convinced her supervisors in Houston to limit her telecommuting privileges. *See* R. Doc. 93-1, p. 2.

However, based on Stone's deposition transcript, her transfer to the Houston office was delayed by her own desire to close out her files in New Orleans before she transferred. R. Doc. 78-3, p. 65.[14] Stone also testified that during the time she was trying to close out cases she was out on sick leave from the end of July 2010 until August 17, 2010, which further delayed her Houston transfer *Id.* at 63. Ultimately, Stone agreed with Jay Frost, the director, to delay her transfer until August of 2010. *Id.* at 66.

The transcript also reveals that the Houston office did not allow its employees to telecommute until June or July of 2011 and permitted telecommuting two days a week. *Id.* at 45. When the Houston office allowed its employee to telecommute, Stone was allowed to telecommute one day a week. *Id.* at 57.

Although the Fifth Circuit has not specially addressed whether restriction of telecommuting constituted an adverse employment action, numerous federal courts have held that denying an employee's request to telecommute is not an adverse employment action for

---

[14] "Q: "All right, So were they completed before you went out on sick leave?" A. "I completed the one that I had – that I was suppose to complete. I remember working in the office and completing the ones that I mentioned that I was supposed to complete. I had waiver on the others ones." Q: Okay. "What day were you expecting to go to the Houston office?" A: "I actually was going to leave I think earlier in July, but I wanted to make sure everything that I everything I can just turn in ahead of – you know, before I left. But when I saw that I was constantly being targeted, I decided that it was best that I just go ahead on now." R. Doc. 78-3, p. 65

purpose of Title VII.  *See Allbritain v. Tex. Dep't of Ins.*, 2014 WL 272223, at *10 (W.D.Tex., Jan. 23, 2014) (citing *Lewis v. CareCore Nat'l LLC*, 2012 WL 3704985, *9 (D.Colo. May 30, 2012) ("Even if Plaintiff was inconvenienced by having to commute to work as opposed to telecommute from home, a mere inconvenience is not an adverse employment action.") (internal citations omitted); *Homberg v. UPS*, , 2006 WL 2092457, at *9 (D.Kan. July 27, 2006) (noting "district courts in other jurisdictions have consistently held that the denial of a request to work from home is not adverse employment action"); *Haas v. Zurich N. Am.*, 2006 WL 2849699, at *4 (N.D.Ill. Sep.29, 2006) ("The fact that [plaintiff's supervisor] did not permit Ms. Haas to work from home every time she requested is also not an adverse employment action.").

The Court is not persuaded by Stone's argument that the Court should rule in her favor because the Department has refused to respond fully to her discovery requests concerning: (1) her rating level of 3 as compared with rating levels of 4 for pay raises and professional promotions and (2) her request for production of audit cases in which she was given credit, those in which she was not given credit, and ones that were not returned in time for her end of the year production numbers. R. Doc. 93, p. 1.

The Court notes that this case has been pending for over three years and a half. During this time, the record reflects that Stone never filed a motion to compel to seek an Order from the Court compelling production of materials that she now argues the Department failed to produce. Moreover, there is also no evidence that Stone propounded the mentioned discovery requests as there are no such requests in the record nor did she attach the request to her opposition. Even assuming that Stone has the information that she seeks which relates to her job performance and what she perceives as a negative evaluation, negative performance evaluations, even if undeserved, are not adverse employment actions. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp.

2d 971, 982 (E.D. Tex. 2004) (citing *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("[N]egative performance evaluations, standing alone, cannot constitute an adverse employment action.")).

Stone testified that she was never disciplined by Lockley or anyone else when she worked in the New Orleans office. R. Doc. 78-3, p. 81. In addition, her wages never decreased. *Id.* Perhaps most importantly, Lockley who Stone alleged retaliated against her, in fact, recommended her for a merit increase for her work performance during 2010 prior to her relocation. R. Doc. 78-9, p. 1. Stone has therefore failed to establish that she suffered an adverse employment action during her employment with the Department. Accordingly, the retaliation claim is summarily dismissed with prejudice.

## IV.   Conclusion

Accordingly

**IT IS ORDERED** that the Louisiana Department of Revenue's **Motion for Summary Judgment (R. Doc. 78)** is **GRANTED**.

New Orleans, Louisiana, this <u>13th</u> day of July 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**